GOODYEAR TIRE & RUBBER COMPANY, Petitioner-Appellant, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Respondent.

Court of Appeals

*No. 77–650. Argued September 8, 1978.—*
*Decided November 22, 1978.*
(Also reported in 273 N.W.2d 786.)

For the appellant there were briefs by *Joseph A. Melli* and *Dennis M. White,* and *Melli, Shiels, Walker & Pease, S.C.,* and oral argument by *Joseph A. Melli,* Madison, WI.

For the respondent there was a brief by *Bronson C. La Follette,* Attorney General, and *Charles D. Hoornstra,* Asst. Attorney General, and oral argument by *Charles D. Hoornstra,* Asst. Attorney General.

Before Gartzke, P.J., Bablitch and Dykman, JJ.

GARTZKE, P.J. This is an appeal by Goodyear Tire & Rubber Company from the judgment of the Dane County Circuit Court, the Honorable P. Charles Jones presiding, affirming the decision and order of the Department of Industry, Labor & Human Relations. We affirm.

Goodyear is an employer in interstate commerce subject to the National Labor Relations Act (NLRA), 29 U.S.C. sec. 151 *et seq.* It negotiated a sickness and disability plan with a union representing certain of its employees. The plan is a welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. sec. 1001 *et seq.*

Goodyear's plan provides weekly disability benefits for the duration of a disability not to exceed 52 weeks, except that in the case of disabilities due to pregnancy weekly benefits are limited to six weeks.[1]

Two of appellant's employees, Julia L. Lince and Vicki Bloedow, became pregnant during their employ. They sought and were denied benefits exceeding six weeks disability under the negotiated sickness and disability plan. August 28, 1973, Julia A. Lince filed her complaint against Goodyear with the department alleging that the plan discriminated against her on the basis of sex. October 26, 1973, Vicki Bloedow filed a similar complaint. The complaints were consolidated for hearing by the department.

November 22, 1976, the department found the disparate treatment of pregnant women under the plan is sex discrimination within the meaning of the Wisconsin Fair Employment Act, secs. 111.31–111.37, Stats., 1973, and ordered appellant to cease and desist from excluding pregnancy disabilities from the full benefits of the plan.

The circuit court affirmed the decision and order of the department.

The issues are:

1. Should holdings of the Wisconsin Supreme Court that pregnancy classifications may constitute sex discrimination under sec. 111.32 (5) (g) 1, Stats., 1973, be reversed?

---

[1] The parties have stipulated the facts as to coverage.

2. Does the Employment Retirement Income Security Act of 1974 preempt Wisconsin's sex discrimination law, sec. 111.32(5) (g) 1, Stats.?

3. Does the National Labor Relations Act preempt Wisconsin's sex discrimination law. sec. 111.32(5) (g) 1, Stats.?

## I

### ·BACKGROUND

Ms. Lince and Ms. Bloedow began their maternity leaves in 1972 and 1973, respectively. All references are therefore to the 1973 Wisconsin Statutes unless otherwise noted.

Sec. 111.325, Stats., makes it unlawful for an employer to "discriminate against any employe." Sec. 111.32(5) (a), defines "discrimination" as "discrimination because of . . . sex . . . by an employer . . . against any employe . . . in regard to his hire, tenure or term, condi- ·tion or privilege of employment . . ." Sec. 111.32(5) (g) 1, provides,

"It is discrimination because of sex: 1. For an employer . . . to discriminate against such individual in promotion, compensation, or in terms, conditions or privileges of employment of licensing."

Sec. 111.32(5) (d), Stats., provides,

"The prohibition against discrimination because of sex does not apply to the exclusive employment of one sex in positions where the nature of the work or working conditions provide valid reasons for hiring only men or women, or to a differential in pay between employees which is based in good faith on any factor other than sex."

The Wisconsin Supreme Court held in *Ray-O-Vac v. ILHR Department,* 70 Wis.2d 919, 236 N.W.2d 209

(1975), that where the employer's group insurance plan provided non-occupational disability benefits for a maximum of 26 weeks during any one period of disability but restricted disability benefits due to pregnancy or childbirth to a maximum of six weeks, the department could find that the disparate treatment was "discrimination because of sex" under the Fair Employment Act.

The United States Supreme Court held in *General Electric v. Gilbert*, 429 U.S. 125 (1976), that an employer's plan which provided nonoccupational disability benefits for a maximum of 26 weeks but excluded benefits for an absence due to pregnancy, did not violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e–2(a)(1), which provides,

"It shall be unlawful employment practice for an employer—(1) to . . . discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's . . . sex . . . ;"

## II

## SEX DISCRIMINATION

Goodyear argues that its plan does not constitute intentional discrimination based on gender; that its plan does not have a disparate effect based on gender; and that the Wisconsin Fair Employment Act must be construed consistently with Title VII and *General Electric v. Gilbert*, as a matter of comity and to avoid conflict with Title VII.

### A. *Intentional Discrimination Based on Gender: "Facial Discrimination"*

Goodyear contends that its plan is free from gender-based discrimination because the only distinction in cov-

erage relates to the length of time benefits are paid for one condition, pregnancy; that the persons affected by that distinction consist of two groups, "one of which is composed of both men and women who are not pregnant" and the other "is composed of pregnant women;" and that such a classification is not based solely on gender.

The plan does not, on its face, provide that men and women as such are entitled to different disability benefits. It therefore does not involve discrimination based on gender. *General Electric v. Gilbert, supra.*

### B. *Discrimination Based on Effect or Impact*

The Wisconsin Supreme Court and the United States Supreme Court agree that a facially nondiscriminatory plan may nevertheless be discriminatory in its effect. *Gilbert* held that "proof that the effect of an otherwise facially neutral plan or classification is to discriminate" may establish a *prima facie* case of sexual discrimination. 429 U.S. at 137. *Wisconsin Telephone Co. v. ILHR Department,* 68 Wis.2d 345, 368, 228 N.W.2d 649 (1975), held that the Fair Employment Act is intended to "eliminate practices that have discriminatory impact as well as practices which on their face amount to invidious discrimination." *Ray-O-Vac* held that an argument that a plan is facially neutral "misses the point" if "the effect of the benefits program is to provide disparate treatment for men and women employees." 70 Wis.2d at 930.

In spite of this common ground, *Wisconsin Telephone* and *Ray-O-Vac* hold that a facially neutral plan which provides disability benefits related to pregnancy which are less than benefits for disabilities generally, can be found to discriminate on the basis of sex because of the effect of the plan. *Gilbert,* on the other hand, holds that a facially neutral plan which excludes disability benefits related to pregnancy, cannot be found to discriminate

on the basis of sex in the *absence* of evidence that such is the effect.

Goodyear urges reconsideration of our Wisconsin precedents in light of *Gilbert*.

The distinction between providing lesser benefits and excluding benefits for pregnancy related disability is of no moment. The two-class analysis—pregnant women and nonpregnant persons—was applied in *Geduldig v. Aiello*, 417 U.S. 484, 497 (1974), to find that a plan which excluded pregnancy benefits did not offend the fourteenth amendment to the United States Constitution and in *Gilbert* to find that such an exclusion is not sex discrimination under Title VII, and was noted in *Wisconsin Telephone*, 68 Wis.2d at 367, and in *Ray-O-Vac*, 70 Wis.2d at 930, as freeing plans providing lesser pregnancy benefits from facial discrimination. Pregnancy exclusions as well as lesser benefits for pregnancy disabilities are, in our opinion, equally voided under *Wisconsin Telephone* and *Ray-O-Vac* because of their effect.

The approaches of the United States Supreme Court in *Gilbert* and of the Wisconsin Supreme Court in *Ray-O-Vac* to the issue of discriminatory effect are fundamentally different, so different that the Court of Appeals of Wisconsin should not adopt the holding of *Gilbert*.

The United States Supreme Court approached the question of discriminatory effect primarily in terms of classes. It held that a *"prima facie* violation of Title VII can be established in some circumstances upon proof that the effect of an otherwise facially neutral plan or discrimination is to discriminate against members of one class or another." 429 U.S. at 137. [Emphasis added.] The court held that the respondents had not proved gender-based effects upon a class. It found there was no evidence to support a finding that the plan worked to discriminate against any definable group or class in terms of aggregate risk protection. It referred to the General Electric plan as "an insurance package," and

said, "The 'package' going to relevant identifiable groups we are presently concerned with—General Electric's male and female employees—covers the same categories of risk. . ." It refers to the "facially even-handed inclusion of risks" under the plan and finds that Title VII is not violated "even though the 'underinclusion' of risks impacts, as a result of pregnancy-related disabilities, more heavily upon one gender than upon the other." (429 U.S. at 138 and 140) The impact upon the individual female employee who must spend her own money to buy a personal disability policy covering pregnancy disability as compared to a male who is fully insured without extra expenditure is discussed and held to be nondiscriminatory in a footnote. 429 U.S. at 139, footnote 17.

*Ray-O-Vac*, on the other hand, approaches impact or effect in terms of the need of an individual for the benefits the plan is intended to provide: financial assistance to employees who are temporarily disabled, whether male or female. *Ray-O-Vac* holds that providing lesser benefits arising out of pregnancy-related disability has the effect of sex discrimination because,

"A woman employee who is disabled as a result of a pregnancy has as great a need for the benefits which are provided by the plan as an employee, man or woman, who is disabled as a result of a non-occupational accidental injury or disease." 70 Wis.2d. at 931.

The logic of a class analysis was found resistible by the United States Supreme Court in *City of Los Angeles Department of Water & Power v. Manhart*, 435 U.S. 702 (1978), to the point where one member of the majority believes that *Gilbert* may no longer be precedent. The Los Angeles Department of Water required female employees to make larger contributions to a pension fund than male employees because women, as a class, live longer than men. The court held that the plan violated Title VII because it discriminated against individual female employees on the basis of their sex. The court noted that

women, as a class, do live longer than men but many women do not live as long as the average man and many men outlive the average woman. 42 U.S.C. sec. 2000e–2 (a) (1) makes it unlawful "to discriminate against any individual." The court held, "The statute's focus on the individual is unambiguous. It precludes treatment of individuals as simply components of a racial, religious, sexual or national class." 435 U.S. at 708. The court said, "Even if the statute's language were less clear, the public policy of the statute requires that we focus on fairness to individuals rather than fairness to classes." 435 U.S. at 709. The majority distinguished *Gilbert* on grounds that the Los Angeles Department of Water plan "discriminated on the basis of sex whereas the General Electric plan discriminated on the basis of a special physical disability." 435 U.S. at 715. Justice Blackmun, concurring in part and concurring in the judgment, concluded that the *Manhart* decision "cuts back on *General Electric,* and inferentially on *Geduldig* the reasoning of which was adopted there . . . and, indeed, makes the recognition of those cases as continuing precedent somewhat questionable." 435 U.S. at 725.

Sec. 111.32(5) (g) 1, Stats., is as clear as Title VII in its emphasis upon the individual. Sec. 111.32(5) (g) 1, Stats., provides, "It is discrimination because of sex: 1. For an employer . . . to discriminate against such individual. . ."

The fundamental differences between the approaches of *Gilbert* and *Ray-O-Vac* to sex discrimination under similar statutes suffice for the conclusion that overruling *Ray-O-Vac* is not compelled by *Gilbert*. The subsequent decision by the United States Supreme Court in *Manhart* confirms the appropriateness of the emphasis in *Ray-O-Vac* upon women as individuals rather than women as a class.

## C. *Consistent Construction With Title VII and Gilbert*

Goodyear insists that *Ray-O-Vac* be overruled because the Wisconsin Fair Employment Act must be construed consistently with Title VII and with *Gilbert*, "both as a matter of comity and to avoid conflict with Title VII."

Comity, in this context, must refer to the traditional deference and respect of state courts for decisions of the United States Supreme Court, whether or not binding upon the states. Wisconsin courts, however, must construe Wisconsin statutes as it is believed the Wisconsin legislature intended, regardless of how Congress may have intended comparable statutes. Even the United States Supreme Court must abide by this state's interpretation of its laws. *Groppi v. Wisconsin,* 400 U.S. 505, 507 (1971), *Mullaney v. Wilbur,* 421 U.S. 684 (1975).

Notwithstanding comity, state courts have not universally accepted *Gilbert*. See *Brooklyn Union Gas v. N. Y. State H. R. A. Bd.,* 41 N.Y.2d 84, 359 N.E.2d 393 (1976), *Anderson v. Upper Bucks Cty. Area V. T. School,* 30 Pa. Commw. Ct. 103, 373 A.2d 126 (1977), *appeal denied,* No. 3055 (Pa. S. Ct. May 2, 1978) ; *Contra, Narragansett Elec. v. R. I. Comm'n. for Hum. R.,* 374 A.2d 1022 (1977).

Consistency in interpretation of Wisconsin law with similar federal law is elusive. *Ray-O-Vac* was consistent with Title VII as then understood at the time it was decided. *Ray-O-Vac* relied partly on *Gilbert v. General Electric Co.,* 375 F. Supp. 367 (D.C. Va. 1974), which was affirmed by the Court of Appeals for the Fourth Circuit, 519 F.2d 661, but was reversed in *General Electric v. Gilbert*. *Gilbert* in turn has been questioned by Justice Blackmun's concurrence in *City of Los Angeles Department of Water v. Manhart.*

Goodyear argues that if *Ray-O-Vac* is followed and increased pregnancy benefits for women are required in all

benefit plans because their sex requires such benefits,
Wisconsin law could then conceivably require discrimination against men, in violation of Title VII. Goodyear states that such coverage could result in greater economic benefits to women when the value of all insurance benefits or other fringe benefits are computed for men and women separately.

*Ray-O-Vac* did not hold that pregnancy benefits are required because women, as such, require such benefits. *Ray-O-Vac* holds that when disability benefits are granted as a condition of employment each individual, whether man or woman, must have access to the same scope of benefits. The woman who because of an operation peculiar to her sex becomes disabled must be given the same scope of disability benefits as the man who is disabled because of an operation peculiar to his sex. It matters not under *Ray-O-Vac* that women, as a class, may in one year receive more dollars in benefits than men, as a class, or that the average woman may receive more than the average man. It does matter that individuals are treated as individuals, and equally in terms of compensation for disability, even if they may have disabilities arising out of factors peculiar to their sex.

Goodyear's view that providing women with the same coverage may cause discrimination against men is comparable to the contention of the Department of Water in *Manhart* that unless women as a class were assessed an extra charge for their pensions, they would be subsidized by the class of male employees. 435 U.S. at 709. The department argued that a gender-neutral pension plan would violate Title VII because of its disproportionately heavy impact on male employees. 435 U.S. at 710–711, footnote 20. The United States Supreme Court said as to the first argument that the better risks always subsidize the poorer risks within a single group and that "treating different classes of risks as though they

were the same for purposes of group insurance is a common practice which has never been considered inherently unfair." 435 U.S. at 710. The court said as to the second argument, "Even a completely neutral practice will inevitably have *some* [sic] disproportionate impact on one group or another" and that the court has never held that discrimination must always be inferred from such consequences. 435 U.S. at 711, footnote 20.

The brief amicus curiae filed on behalf of the Wisconsin Merchant's Association states that the real question is whether a plan which results in a reasonably equal distribution of benefits without regard to sex is discriminatory. The specifics of such a plan are not presented. The only way to achieve equality would be to divide the benefit dollars available by the number of employees chosen at some arbitrary moment and to distribute the dollars accordingly.[2] Goodyear presented no evidence as to the class or per capita distribution of its benefits. We cannot comment on a plan not before us on the basis of a hypothetical distribution of benefits.

## III

## ERISA PREEMPTION

Goodyear argues that the Department of Industry, Labor and Human Relations has no jurisdiction over Goodyear's disability benefit plan because the Employee Re-

---

[2] *City of Los Angeles Department of Water & Power v. Manhart,* 435 U.S. at 717, distinguished that situation from a plan maintained by the employer. The court said, "All that is at issue today is a requirement that men and women make unequal contributions to an employer-operated pension plan. Nothing in our holding implies that it would be unlawful for an employer to set aside equal retirement contributions for each employee and let each retiree purchase the largest benefit which his or her accumulated contributions could command in the open market."

tirement Income Security Act of 1974 (ERISA), 29 U.S.C. secs. 1001–1381 (Supp. 1975), preempts the sex discrimination prohibitions in the Wisconsin Fair Employment Act as to employee benefit plans subject to ERISA. We disagree.

29 U.S.C. sec. 1144(a) of ERISA provides in part:

". . . this title . . . shall supersede *any and all State laws* insofar as they may now or hereafter *relate to any employee benefit plan* described in [29 U.S.C. sec. 1003 (a)] of this title and not exempt under [29 U.S.C. sec. 1003(b)]." (Emphasis added.)

"State law" is defined in 29 U.S.C. sec. 1144(c)(1) as follows:

"The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. . ."

"State" is defined in 29 U.S.C. sec. 1144(c)(2) as follows:

"The term 'State' includes a State, any political subdivisions thereof, *or any agency* or instrumentality of either, *which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this title."* (Emphasis added.)

The parties agree that Goodyear's plan is an employee benefit plan as defined in, and is subject to, ERISA.

There are four exceptions to the broad preemption of state laws as provided in 29 U.S.C. sec. 1144(a) of ERISA: first, "with respect to any cause of action which arose, or any action or omission which occurred before January 1, 1975" (sec. 1144[b][1]); second, with respect to state laws regulating insurance, banking or securities (sec. 1144[b][2]); third, generally applicable criminal laws of the state (sec. 1144[b][4]); and fourth, "Nothing in this title shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the

United States (except as provided in secs. 111 (29 U.S.C. sec. 1031) and 507(b) (29 U.S.C. sec. 1137[b]) or any rule or regulation issued under any such law." (Sec. 1144[d].)

The events in this case arose prior to January 1, 1975, but the department's cease and desist order against Goodyear applies to the present and future. The first exemption therefore does not apply. No argument is made that the second or third exemption applies. The Attorney General urges, on the basis of the fourth exemption, that the sex discrimination provisions of the Wisconsin Fair Employment Act are not preempted by ERISA.

The Attorney General contends, and the circuit court held, that the fourth ERISA exemption, sec. 1144(d), preserves intact Title VII of the Civil Rights Act of 1964, 42 U.S.C. secs. 2000e *et seq.*, and that Title VII expressly preserves state laws, like the Wisconsin Fair Employment Act, which parallel the federal act in prohibiting employment discrimination. 42 U.S.C. sec. 2000e–7 provides,

"Nothing in this title [42 U.S.C. secs. 2000e *et seq.*] shall be deemed to exempt or relieve any person from any liability, duty, penalty or punishment provided by any present or future law of any State or political subdivision of a state, other than any such law which purports to require or permit the doing of any act which would be unlawful employment practice under this title."

42 U.S.C. sec. 2000h–4 provides,

"Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the subject matter, nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof."

Courts construing the insurance exemption from ERISA, sec. 1144(b)(2), have used broad language to describe the scope of preemption, relying on equally broad statements by legislators and legislative committees. See *Hewlett-Packard Co. v. Barnes*, 425 F. Supp. 1294 (N.D. Cal. 1977), *aff'd* 571 F.2d 562 (9th Cir. 1978) (California statute regulating health care service plan preempted); *Azzaro v. Harnett*, 414 F. Supp. 473 (S.D.N.Y. 1976) (preemption precludes state superintendent of insurance from inquiry into union pension fund); *Standard Oil Company of California v. Agsalud*, 442 F. Supp. 695 (N.D. Cal. 1977) (Hawaii's statute requiring workers to be covered by health plan is preempted). Preemption has arisen in other contexts. *Guthrie v. Dow Chemical Co.*, 445 F. Supp. 311 (S.D. Tex. 2978) (state court has no jurisdiction to declare plan in violation of ERISA and Constitution). *See also Bell v. Employee Sec. Ben. Assn.*, 437 F. Supp. 382 (D. Kan. 1977) (ERISA "clearly preempts all state regulation" of employee benefit plans but the plan there involved was outside the definition).

We are referred to only one reported case which discusses the sec. 1144(d) exemption from preemption, and that case deals specifically with the question of preemption of state laws prohibiting sex discrimination.[3] *Liberty Mutual Ins. Co. v. State Division of Human Relations*, 402 N.Y.S.2d 218, 61 A.D.2d 822 (1978), reviewed a determination by the State Human Rights Appeal Board which affirmed an administrative finding that an employer had discriminated against the complainant on

[3] ERISA preemption of a state sex discrimination law was raised in *Westinghouse Electric Corp. v. State Human Rights*, 401 N.Y.S.2d 597, 60 A.D.2d 943 (1978), but given short shrift with the statement that no "clear legal basis" was shown for finding that federal statutes preclude the state from taking corrective action on sex discrimination.

the basis of her sex through disallowance of pregnancy-related benefits. The court said,

"Although the Congress fashioned a broad preemptive policy when it passed ERISA . . . the legislative history behind the passage of the retirement program leads us to conclude that Congress did not intend to narrow the jurisdiction of those Federal and State agencies whose duty it is to regulate unlawful employment practices." 402 N.Y.S.2d at 219, 61 A.D.2d 822 (1978).

The court relied upon statements by Senator Mondale and Representative Abzug made in their respective houses to the effect that each had intended to propose an amendment to the pending bill incorporating provisions prohibiting discrimination in employee benefit plans based on race, color, religion, sex or national origin but did not do so upon assurances that such discrimination was already prohibited by the Equal Employment Opportunity Act, 42 U.S.C. sec. 2000e–2(a). ERISA draftsmen agreed that discrimination in employee benefit plans was prohibited by existing law and that the courts were following that view. (*See* 119 Cong. Rec. S 30409–10, September 19, 1973, and 120 Cong. Rec. H 4726, February 28, 1974.) The court said,

"Since title VII of the Civil Rights Act has clearly not been impaired by ERISA (see U.S. Code, tit. 29, sec. 1144(d); U.S. Code, tit. 42, sec. 2000e–7), and since it vests concurrent jurisdiction in the Equal Employment Opportunity Commission and similar State-level agencies to investigate these claims (see, e.g., U.S. Code, tit. 42, sec. 2000e–4(g)(1), 2000e–7), we find that the jurisdiction of the State Division of Human Rights was not preempted by ERISA." 402 N.Y.S.2d at 219, 61 A.D.2d 822.

State and federal trial courts in other states[4] have differed on the issue of ERISA preemption of state sex

---

[4] The Oregon Court of Appeals (in a decision unreported as of this date) concluded that Oregon's statute relating to pregnancy

discrimination laws. The United States District Court for the Eastern District of Wisconsin, the Honorable Robert W. Warren, presiding, held in July, 1978 in *Bucyrus-Erie Co. v. DILHR*, No. 78–C–99, that ERISA did not preempt anti-sex discrimination provisions in the Wisconsin Fair Employment Act. Judge Warren concluded from an examination of the provisions of ERISA and its legislative history and Congress' longstanding recognition of the importance of state employment discrimination laws, that it is not clear that Congress intended such preemption. Retired Wisconsin Supreme Court Justice George R. Currie as a reserve circuit judge concluded in *Time Insurance Company v. Department of Industry, Labor and Human Relations,* case no. 154423, in January, 1978, that as sec. 111.32(5)(g), Stats., is a broad statute grounded on the state's police power to prevent sex discrimination employment practices, and as there exists a rational doubt that preemption exists, Wisconsin courts should uphold the validity of the statute against a claim of ERISA preemption.[5]

We conclude that sec. 111.32(5)(g), Stats., prohibiting sex discrimination by an employer, "relates" to Goodyear's employee benefit plan, in that the statute, as con-

benefits "under fringe benefit programs" was not preempted by ERISA "in the absence of any legislative declaration that Congress intended to create an enormous regulatory vacuum in areas that traditionally have been matters of vital state concern." It rejected the view that the Oregon statute was exempt from preemption under sec. 1144(d) of ERISA and Title VII because "the federal Civil Rights Act does not require pregnancy benefits be paid as a part of an employee health and welfare benefit program," citing *General Electric v. Gilbert,* 429 U.S. 125 (1976), *Gast v. State,* No. 7710–14092, CA 9686, October, 1978.

[5] The United States District Court, District of Connecticut, noted *Bucyrus-Erie,* No. 78–C–99, and the circuit court's decision in the case before us and rejected "the reasoning of this double savings clause contention." *Pervel Industries v. State,* Civil Action No. H–78–459, October, 1978.

strued by *Ray-O-Vac*, invalidates a provision of the plan, namely, disability benefits arising out of pregnancy. Sec. 111.32(5)(g), is therefore preempted under sec. 1144(a) of ERISA so far as it relates to employee benefit plans, unless exempt from preemption. We conclude that the exemption contained in sec. 1144(d) applies to Title VII of the Civil Rights Act and, through Title VII, to sec. 111.32(5)(g), of the Wisconsin Fair Employment Act so as to preserve it from ERISA preemption.

There is no question but that prior to ERISA, sec. 111.32(5)(g), Stats., was consistent with Title VII which, like the Wisconsin statute, prohibited sex discrimination in employment. 42 U.S.C. sec. 2000e–2(a)(1). The Wisconsin statute therefore survived and was not preempted by Title VII. More precisely, and in the words of 42 U.S.C. sec. 2000h–4, there was no "intent on the part of Congress to occupy the field . . . (of sex discrimination in employment) . . . to the exclusion of" Wisconsin's law on the same subject.

And there is no question but that Title VII survives intact the preemption provisions of ERISA by virtue of sec. 1144(d).

If sec. 111.32(5)(g), Stats., survived Title VII, and if the latter survives ERISA, then the logic of the federal statutes compels the conclusion that sec. 111.32(5)(g), survives ERISA.

Goodyear argues that sec. 111.32(5)(g), Stats., survives only Title VII and is preempted as to employee benefit plans because the exemption from preemption is limited to Title VII. The argument is based upon the opening words of 42 U.S.C. 2000h–4, "Nothing contained in any title of *this* Act shall be construed . . ." as preempting state laws and, the argument continues, "other federal statutes" may work preemption. The "other federal statute" involved, however, is sec. 1144(d) of

ERISA which tells us, in effect, that nothing in Title VII shall be construed as altered, amended, modified, invalidated, impaired or superseded by ERISA. If we are to adopt Goodyear's view of ERISA, an exception as to employee benefit plans must be found in 42 U.S.C. 2000h–4 of Title VII. That exception does not appear on the face of 42 U.S.C. 2000h–4. Such an exception would have to be based upon an implied amendment of Title VII resulting from the adoption of ERISA, and would be contrary to sec. 1144 (d) of ERISA.

Goodyear argues it would be a non sequitur for Congress broadly to declare that state laws are preempted and then to permit the states to regulate employee benefit plans through the mechanism of a different federal statute. But the fact is that Congress declared in sec. 1144(d) of ERISA that federal laws remain unchanged after ERISA and Title VII continues to permit states to prohibit sex discrimination in employment.

Goodyear points to portions of the legislative history of ERISA which indicate an intent that the preemption provisions apply broadly. Sec. 1144 of ERISA itself, however, spells out four areas where preemption does *not* occur, including the broad area covered by the exemption before us, sec. 1144(d).

Further, the legislative history of ERISA is not pertinent, under traditional canons of interpretation, to an unambiguous statute. *United Air Lines, Inc. v. McMann,* 434 U.S. 192, 199 (1977). While recourse to the legislative history is therefore inappropriate, the only reference to discrimination in the history brought to our attention is the colloquy between Senator Mondale and Representative Abzug described in *Liberty Mutual Ins. Co. v. State Division of Human Relations,* 402 N.Y.S.2d 218, 61 A.D. 2d 822 (1978). Nothing in that colloquy supports the construction urged by Goodyear. If we look to the congressional findings and declarations of policy in 29

U.S.C. sec. 1001 of ERISA, we find no reference to discrimination, sexual or otherwise. While subsection (a) refers to the Congressional decision "that minimum standards be provided assuring the equitable character of such plans and their financial soundness," the preceding language and the quoted provision itself indicate that "equitable character" refers to monetary considerations. Subsection (b) emphasizes monetary considerations in protecting the interests of participants "by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." Subsection (c) again emphasizes financial considerations through "improving the equitable character and the soundness of such plans by requiring them to vest the accrued benefits of employees with significant periods of service, to meet minimum standards of funding, and by requiring plan termination insurance." No other provision in ERISA refers expressly to discrimination as to race, color, religion, sex or national origin.[6]

Goodyear contends that the following remarks of Senator Javits and Senator Williams, the principal architects of ERISA, regarding the impact of ERISA upon the Age Discrimination in Employment Act Amendments of 1978, P.L. 95–256, 92 Stats. 189 (1978), amending the Age Discrimination in Employment Act of 1967, 29 U.S.C. sec. 621–634, "are entitled to substantial weight in interpreting ERISA, in that they reflect upon the legislative intent of an earlier statute through subsequently enacted legislation":

---

[6] 29 U.S.C. sec. 1140 makes it unlawful "to discharge, fine, suspend, expel, discipline, or *discriminate*" against a participant or beneficiary for exercising rights under plan or ERISA or the Welfare and Pension Plans Disclosure Act (29 U.S.C. sec. 301 *et seq.*) or against any person for giving information or testifying in a proceeding relating to ERISA or the Disclosure Act.

"MR. JAVITS. Finally, Mr. President, it is understood that just as these age discrimination amendments do not interfere with ERISA, State age discrimination in employment laws also are not to interfere with ERISA. The ADEA itself, as pointed out in the Senate report, does not preempt such State age discrimination laws. However, there should be no question that the preemption rules of section 514(a) [29 U.S.C. sec. 1144(a)] of ERISA shall be determinative regarding the preemption of State age discrimination laws which directly or indirectly establish requirements relating to employee benefit plans. ERISA's preemption of State age discrimination laws shall be determined without regard to section 514(d) [29 U.S.C. sec. 1144(d)] of ERISA or the fact that the ADEA does not itself preempt State law.

"MR. WILLIAMS. I concur in my friend's observations as they accurately state the controlling principles of law in this regard. Federal law will preempt State age discrimination statutes only to the extent that those laws relate to an employee benefit plan described in section 4(a) of ERISA and are not exempt under section 4(b) of ERISA." 124 Cong. Rec. S4451 (March 23, 1978), S4767 (April 4, 1978).

That senatorial colloquy occurred more than three years after ERISA was enacted. Legislative observations years after passage of the Act are not part of its legislative history. *United Air Lines, Inc. v. McMann,* 434 U.S. 192, 200, footnote 7 (1977). Our construction of ERISA is not foreclosed because members of Congress express contrary views after its passage. *United States v. Philadelphia Nat. Bank,* 374 U.S. 321, 384 (1963). The Age Discrimination in Employment Act Amendments of 1978 do not amend, clarify or attempt to clarify ERISA. Goodyear's reliance upon *Red Lion Broadcasting Co. v. F. C. C.,* 394 U.S. 367 (1968), is therefore misplaced, for in *Red Lion* the court said, "Subsequent legislation *declaring the intention of an earlier statute* is entitled to great weight in statutory construction." (381, emphasis added.)

## IV

## NATIONAL LABOR RELATIONS ACT PREEMPTION

Goodyear argues (a) that the department is preempted by federal labor law from altering the lawful terms of its collective bargaining agreement, (b) the department is preempted from enforcing Wisconsin's sex discrimination law because sex discrimination is regulated under the National Labor Relations Act and is not of peripheral concern to that Act and, (c) in any event, the department cannot enforce a state law in conflict with the National Labor Relations Act.

### A. *Altering Terms of Collective Bargaining Agreement*

Goodyear's disability plan was negotiated with a union representing certain of its employees and Goodyear is an employer subject to the National Labor Relations Act (NLRA), 29 U.S.C. sec. 151 *et seq.* The effect of the department's order is to invalidate a provision in that plan which excludes pregnancy disabilities from full benefits. The department's order therefore alters Goodyear's collective bargaining agreement.

*Malone v. White Motor Corp.,* 435 U.S. 497 (1978), involved the validity of Minnesota's Private Pension Benefit Protection Act which imposed a "pension funding charge" against an employer who ceased to operate a place of employment or a pension plan. The "charge" would be sufficient to insure that each employee with more than 10 years of service would receive whatever pension benefit had accrued to the employee regardless whether those rights had "vested" within the meaning of the plan. The "charge" would be used to purchase a retirement annuity for the employee. The statute was

passed before the effective date of ERISA. White Motor exercised its contractual right to terminate the pension plan prior to the effective date of ERISA and sought to avoid imposition of a "pension funding charge." The United States Supreme Court said that the question was whether the Minnesota statute,

". . . which since January 1, 1975, has been preempted by the Federal Employee Retirement Income Security Act (ERISA), was preempted prior to that time by federal labor policy insofar as it purported to override or control the terms of collective-bargaining agreements negotiated under the National Labor Relations Act (NLRA)." 435 U.S. at 499. (Footnote omitted.)

The United States Supreme Court concluded in *Malone* that

". . . there is nothing in the NLRA . . . which expressly forecloses all state regulatory power with respect to those issues, such as pension plans, that may be the subject of collective bargaining. If the Pension Act is preempted here, the congressional intent to do so must be *implied* from the relevant provision of the Labor statutes." 435 U.S. at 504.

The court found no such implication and, on the contrary, found an intent in Welfare and Pension Plans Disclosure Act of 1958, 72 Stat. 997[7] to preserve state authority to regulate pension plans.

As the United States Supreme Court in *Malone* looked to federal labor law generally to determine whether state law had been preempted and found an intent not to preempt in the Disclosure Act, Goodyear asserts that *Malone* directs us to federal labor laws generally, including ERISA, to determine whether Wisconsin's sex discrimination law is preempted by federal law.

We do so; and we find an express statement in Title VII, 29 U.S.C. sec. 2000h–4, that there was no "intent

---

[7] Originally codified at 29 U.S.C. sec. 301 *et seq.* and repealed by ERISA, 20 U.S.C. sec. 1031(a) (Supp. V. 1975).

on the part of Congress to occupy the field. . ." of sex discrimination in employee to the exclusion of state laws on the same subject matter.

Goodyear reminds us that ERISA was enacted subsequent to Title VII. Sec. 1144(d) of ERISA, however, preserves Title VII.

Goodyear argues that nothing in the legislative history of Title VII establishes an intent by Congress to allow states to use their anti-discrimination laws to alter collective bargaining agreements that comply with federal anti-discrimination law. *Malone* refused to entertain implied Congressional intent to take away state power to regulate pension plans. The burden, therefore, is on Goodyear to show Congressional intent to take from the states the power to prevent employers and employees from agreeing to discriminate because of sex.

Goodyear nevertheless insists that *Malone* establishes that states cannot alter the terms of a federally lawful labor agreement unless it is "clear and evident" that Congress intended to allow modification. But the Supreme Court prefaced its discussion of preemption in *Malone* with the following:

"Often Congress does not clearly state in its legislation whether it intends to pre-empt state laws; and in such instances the courts *normally sustain local regulation on the same subject matter* unless it conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States." 435 U.S. at 504. (Emphasis added.)

The burden is therefore on Goodyear to show that Congress intended what Goodyear proposes.

### B. *Preemption Through NLRA Regulation of Sex Discrimination*

The starting point for a determination as to whether a particular state law is preempted by NLRA, as such,

must begin with *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236 (1959), which held that when an activity is arguably subject to sec. 7 or 8 of the Act, the states must defer to the exclusive competence of the NLRB if the danger of state interference with national policy is to be averted.

"However, due regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy, has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. See *International Asso. of Machinists v. Gonzales,* 356 U.S. 617, 2 L. Ed.2d 1018, 78 S. Ct. 923. Or where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." 359 U.S. at 243.

"Plainly, national labor policy embodies the principles of nondiscrimination as a matter of highest priority. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36 (1974), and it is a commonplace that we must construe the NLRA in light of the broad national labor policy of which it is a part." *Emporium Capwell Co. v. Community Org.,* 420 U.S. 50, 66 (1975), discussing racial discrimination. Although it is not clear whether the principles of nondiscrimination depend upon Title VII or have an independent source in the NLRA, *Emporium,* 420 U.S. at 69, principles given highest priority in the national labor policy are not of "merely peripheral concern."[8]

---

[8] Evidence of the high priority which our state gives to sexual equality may be found in the many statutes dealing with sex discrimination: Secs. 16.14 (civil service); 16.765 (state contracts); 51.90 (mental treatment facilities); 66.39(13) (veteran's housing); 66.395 (elderly housing); 66.405 (urban redevelopment); 66.43(2m) (urban redevelopment); 66.432 (anti-discrimination ordinances);

Preemption, however, does not turn solely on the question of "peripheral concern." Sex discrimination in Wisconsin touches interests deeply rooted in this state. Wisconsin has prohibited sex discrimination in employment since 1961.[9] Wisconsin has promulgated a massive amount of legislation forbidding sex discrimination.[10]

The commitment of this state to elimination of sexual discrimination in employment prohibits us, "in the absence of compelling congressional direction," *San Diego*, 359 U.S. at 244, from inferring that Congress has deprived this state of the power to act when a collective bargaining agreement, subject to the NLRA, conflicts with Wisconsin policy on sex discrimination.

The Wisconsin sex discrimination law does not frustrate the purposes and intent of the NLRA. While it is true that *Gilbert* validates under federal law a provision in Goodyear's disability plan which our statute, as construed by *Ray-O-Vac* invalidates, Wisconsin law does not permit discrimination where federal law would prevent it. Wisconsin grants women greater protection from discrimination than federal law. That is the essence of the Wisconsin Supreme Court's holding in *Wisconsin Telephone*, 68 Wis.2d at 367, where the court said that

66.94(28) (transit employes); 79.23 (police and sheriff); 101.22 (housing); 101.225 (education); 111.31–111.37 (Fair Employment Act); 118.13 (students); 118.20 (teacher); 138.20 (credit/loans); 227.033 (administrative rules); 234.29 (Housing Finance Authority); 246.15 (equal rights); 942.04 (public accommodation); Stats.; ch. 286, Laws of 1977 (sexual harassment) and ch. 284, Laws of 1977 (school athletic programs).

[9] While sex discrimination in this context has not come before the courts, the NLRB has affirmed that sex discrimination as prohibited by the NLRA is a matter of national labor policy. *Bell & Howell Company*, 95 LRRM 1333 (1977). An employer violates sec. 8(a)(1) of the NLRA if it discriminates against employees who assert their rights relative to sex discrimination. *Jubilee Mfg. Co.*, 202 NLRB No. 2 (1973), enforced per curiam 504 F.2d 271 (D.C. Cir. 1974).

[10] Ch. 529, 1961 Laws.

in interpreting Wisconsin's sex discrimination statutes "the department is not limited to finding discrimination only where a Fourteenth Amendment violation could also be found," notwithstanding the holding of the United States Supreme Court in *Geduldig* that a pregnancy exclusion from a disability insurance system does not deny equal protection under that amendment.

We conclude that the department is not preempted from enforcing Wisconsin's sex discrimination law because of regulation of sex discrimination by the NLRA.

### C. *Preemption From Enforcing State Law Restricting Bargaining Subject Matter*

Goodyear asserts that an interpretation of Wisconsin law contrary to *Gilbert* cannot be applied to Goodyear's collective bargaining agreement because state laws which conflict with the freedom of the parties to exercise lawful rights under the NLRA cannot be enforced, citing *Colorado Anti-Discrimination Commission v. Continental Airlines*, 372 U.S. 714 (1963).

*Continental Airlines* rejected a preemption challenge to a state law prohibiting racial discrimination in hiring practices. Preemption under the Railway Labor Act was rejected because the Act was silent as to discrimination. Preemption under the then Civil Aeronautics Act of 1938 was rejected, even on the assumption that the Act protected job applicants from racial discrimination, there being no express or implied bar to state discrimination legislation in the Act, at least so long as the Civil Aeronautics Board did not exercise its power in that regard. The United States Supreme Court expressly reserved the question whether preemption would occur if the federal authorities attempted to deal with discrimination in hiring practices. 372 U.S. at 724, footnote 22. *Continen-*

*tal Airlines* therefore does not support the broad proposition urged by Goodyear.

We do not accept the view that employers and employees subject to the NLRA may, for that sole reason, discriminate in violation of a state law so as to deprive individuals of state rights which are more protective than federal rights.

*Alexander v. Gardner-Denver Company*, 415 U.S. 36 (1974), holds that an individual's rights to equal employment opportunities under Title VII "form no part of the collective-bargaining process. . ." 415 U.S. at 51.

"Moreover, the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable *state* and federal statutes. The clear inference is that Title VII was designed to *supplement,* rather than supplant, existing laws and institutions relating to employment discrimination." (415 U.S. at 48, 49, emphasis added.)

If Title VII rights to equal employment opportunities are non-negotiable in collective bargaining, and if those rights are in addition to rights granted by state law, it is unlikely that Congress intended that the latter may be bargained away even though Title VII rights may not. And if the individual's rights to equal employment opportunities are greater under state than federal law, it is unlikely that Congress intended that rights obtained from the state may be bargained away even though federal rights may not.

## V

## FEDERAL SUBSTANTIVE LAW ON CONTRACT INTERPRETATION

*Teamsters Union v. Lucas Flour Co.*, 369 U.S. 95 (1962), requires the application of federal substantive

law when interpreting Goodyear's collective bargaining agreement. Goodyear concludes that the department therefore erred in using Wisconsin substantive law to determine whether the terms of the agreement are discriminatory. We disagree.

*Teamsters Union v. Lucas Flour* holds that because of the "possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiations and administration of collective agreements," a labor contract is to be interpreted under federal labor law principles and not state law. (369 U.S. at 103.) The decision does not deal with the regulation of conduct, as did *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236. The department issued its cease and desist order against Goodyear, not as a result of an interpretation of the employee benefit plan (the facts as to that plan being stipulated) but because sec. 111.325, Stats., makes it unlawful for an employer to discriminate against an employee.

## VI

## INFRINGEMENT OF STATE'S RIGHT
## TO PROTECT INDIVIDUALS

The Attorney General submits that the right to apply higher standards to protect individuals remains with the states by virtue of the tenth amendment. Hence, it is said, ERISA and the NLRA cannot constitutionally infringe on the state's right to protect pregnant women.

This issue was not raised in the circuit court. A constitutional issue raised for the first time on appeal will

not be entertained unless there is a compelling reason to do so. *Sambs v. Brookfield,* 66 Wis.2d 296, 314, 224 N.W.2d 583 (1975), and cases cited. No such reason exists, in view of the balance of this opinion.

*By the Court.*—Judgment affirmed.