**Robert J. DEVLIN, Andrew Hagan, Thomas Hewson, Steven Milone, Frederick Rinckwitz, individually, and on behalf of the Retired Employees and their Beneficiaries of the Transportation Communications International Union, Plaintiffs–Appellants,**

**v.**

**TRANSPORTATION COMMUNICATIONS INTERNATIONAL UNION, Robert A. Scardelletti, International President, Plan Administrator and Fiduciary under the Railway Labor Organizations Group Life, Hospital, Surgical and Medical Insurance Plan for their Officers and Employees, and The Travelers Insurance Company, Defendants–Appellees.**

Docket No. 98–7235.

United States Court of Appeals, Second Circuit.

Argued Dec. 4, 1998.

Decided April 13, 1999.

Arthur M. Wisehart, New York, NY (Wisehart & Koch, of counsel), for Plaintiffs–Appellants.

John A. Edmond, Washington, DC (Andrea H. Larue, Guerrieri, Edmond & Clayman, P.C., New York, NY, of counsel), for Defendants–Appellees Transportation Communications International Union and Robert A. Scardelletti.

Craig P. Murphy, New York, NY (Matthew T. McLaughlin, Windels, Marx, Davies & Ives, of counsel), Defendant–Appellee The Travelers Insurance Company.

Before OAKES, CARDAMONE, and CABRANES, Circuit Judges.

OAKES, Senior Circuit Judge:

*Introduction.*

Plaintiffs-appellants, five retired union employees, challenged, on behalf of themselves and other retired officers, employees, and their beneficiaries,[1] the defendants-appellees' amendment of the welfare-benefit plan provided to retired employees and officers to require the retirees to pay $100 per month for their medical benefits. The United States District Court for the Southern District of New York (John F. Keenan, *Judge*) dismissed the plaintiffs' state law claims,

---

1. Nothing in the record indicates that class action certification was requested or granted in this case. Therefore, we will not treat it as a class action. *See American Fed'n of Grain Millers, AFL–CIO v. International Multifoods Corp.*, 116 F.3d 976, 977 n. 1 (2d Cir.1997).

holding that they were pre-empted under Section 514 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1144. The district court also granted summary judgment for the defendants on their ERISA claims, finding that the terms of the benefit plan explicitly provided for its amendment, and that the benefit plan was correctly amended in compliance with the stated amendment procedures. The court further found that ERISA does not prohibit as discriminatory the alterations in retiree benefits complained of here.

We affirm the district court in part, and we vacate in part.

*Background*

Plaintiffs-appellants Robert Devlin, Andrew Hagan, Thomas Hewson, Steven Milone, and Frederick Rinckwitz are retirees who are members and former employees of the defendant-appellee Transportation Communications International Union ("TCU" or "the Union"). As retirees, appellants were provided with free medical benefits under the Railway Labor Organizations Group Life, Hospital, Surgical and Medical Insurance Plan ("the Plan"). However, retirees were notified that, effective January 1, 1994, they would be required to pay $100 per month to maintain their medical benefits. Active employees were provided with free medical benefits and were not affected by the January 1, 1994, change.

The change in the provision of retiree benefits was achieved through an authorization in the Plan Instrument. The Plan Instrument provides that "The Organizations participating in the Group Policies shall have the right to terminate, suspend, withdraw, amend or modify the Plan in whole or in part at any time."

Devlin, Hagan, Hewson, Milone, and Rinckwitz claim that they were told more than once by TCU officials, both before and after retiring, that their health benefits would be paid throughout their retirement. The communications stating such were both written and oral and included a 1964 letter to Union members and officers from the Grand President of the Brotherhood of Railway and Steamship Clerks.[2]

On February 2, 1995, Devlin, Hagan, Hewson, Milone, and Rinckwitz brought suit on behalf of themselves and "as agents on behalf of all" other retirees and their beneficiaries to prevent the change in medical benefits. The suit was filed in the district court against TCU; Robert Scardelletti, International President of TCU; and the Travelers Insurance Company, the provider of the medical benefit plan. In Count One of their complaint, plaintiffs alleged that the benefits change violated ERISA because the benefit plan amendment was not made in accordance with the procedures outlined in the plan and the change in benefits directly conflicted with those guaranteed in the benefit plan itself. In Count Two, the plaintiffs alleged that there was a breach of contract because the retirees had been promised throughout their employment that they would never have to pay for their health benefits after retirement, and they relied on that promise in continuing to remain with TCU as loyal employees. In Count Three of the complaint, the plaintiffs alleged that, under New York and New Jersey state laws, the acts of the defendants constituted unlawful discrimination on the basis of age.

The defendants made motions to dismiss Counts Two and Three under Fed.R.Civ.P. 12(b) for failure to state a claim upon which relief could be granted. On June 26, 1995, the district court granted the motions to dismiss, finding that both the state law claims and the common law contract claims were pre-empted by ERISA. *See Devlin v. Transportation Communications International Union,* No. 95 Civ. 0742, 1995 WL 380374 (S.D.N.Y. June 26, 1995). The court allowed discovery to proceed on the remaining ERISA claim.

**2.** The Brotherhood of Railway and Steamship Clerks was the name of TCU prior to 1987.

The defendants later made motions for summary judgment pursuant to Fed. R.Civ.P. 56 to dismiss Count One of the complaint. On September 10, 1997, the district court granted summary judgment on the ERISA claim. *See Devlin v. Transportation Communications International Union,* No. 95 Civ. 0742, 1997 WL 570512 (S.D.N.Y. Sept. 15, 1997).

This appeal followed. For the reasons set forth below, the district court is affirmed in part and reversed in part.

*Discussion*

*Preemption of State Age Discrimination Laws and Contract Claims*

Appellants argue that the district court's holding that the state law age discrimination claims were pre-empted by ERISA is based on a misapplication of *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The appellants are correct.

█ Whether ERISA preempts a state law or portion thereof is a question of law. *See Campbell v. Aerospace Corp.,* 123 F.3d 1308, 1311 (9th Cir.1997). As such, it is reviewed de novo. *Id.*

█ ERISA is a broad, comprehensive federal statute "designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw,* 463 U.S. at 90, 103 S.Ct. 2890. ERISA has a far-reaching preemptive clause, providing that it shall, with certain exceptions, "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" under ERISA. 29 U.S.C. § 1144(a). This expansive preemptive provision is broadly employed, as Congress intended for exclusively federal regulation of benefit plans. *See Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *NYS Health Maintenance Org. Conference v. Curiale,* 64 F.3d 794, 798 (2d Cir.1995) ("Clearly, Congress intended to establish pension plan regulation as exclusively a federal concern.") (internal quota-

tion marks and citation omitted); *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1217 (5th Cir.1992) (citing *Ingersoll–Rand*). However, we cannot completely "read the presumption against pre-emption out of the law," *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), as "the preemptive power of ERISA is not without limit," *Campbell,* 123 F.3d at 1311.

In *Shaw,* Delta Air Lines and other companies brought three federal actions for declaratory judgments against state agencies and officials, seeking a determination that New York's Human Rights Law, N.Y. Exec. Law §§ 290–301 (McKinney 1982 & Supp.1982–83) ("Human Rights Law" or "NYHRL"), and New York's Disability Benefits Law, N.Y. Work. Comp. Law §§ 200–242 (McKinney 1965 & Supp.1982–83), as they applied to pregnancy, were pre-empted by ERISA. *See Shaw,* 463 U.S. at 88–92, 103 S.Ct. 2890. The Human Rights Law prohibited discrimination on the basis of pregnancy and required the provision of pregnancy benefits in a manner equal to that for other nonoccupational disabilities. *See id.* at 88, 103 S.Ct. 2890. Until 1979, federal law did not prohibit such discrimination. In 1979, however, the Pregnancy Discrimination Act of 1978, 92 Stat. 2076, 42 U.S.C. § 2000e(k) came into effect. This Act added subsection (k) to § 701 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* prohibiting discrimination on the basis of pregnancy. *Id.*

The District Court for the Southern District of New York held that the Human Rights Law was pre-empted to the extent that it required the provision of pregnancy benefits not required under federal law. *See Delta Air Lines, Inc. v. Kramarsky,* 485 F.Supp. 300 (S.D.N.Y.1980). However, the court held that Delta's claim for relief was moot to the extent it involved benefits owed for the period after the effective date of the Pregnancy Discrimination Act; after the effective date federal

law then required employers such as Delta to treat pregnancy disabilities in a non-discriminatory way in their employee benefit plans. *See id.* at 302. The Court of Appeals for the Second Circuit initially reversed the district court as to the Human Rights Law, holding that the law was not pre-empted. *See Delta Air Lines, Inc. v. Kramarsky,* 650 F.2d 1287 (2d Cir.1981). On rehearing, the panel vacated its prior decision and instead affirmed the district court to the extent that it held the Human Rights Law unenforceable. *See Delta Air Lines, Inc. v. Kramarsky,* 666 F.2d 21, 22–23 (2d Cir.1981). With respect to the implications of the recently enacted Pregnancy Discrimination Act, the court said "although Title VII saves state discrimination laws from preemption, it does not transform those laws into federal laws, and only federal laws are protected from preemption by ERISA." *Id.* at 26.

On review, the Supreme Court defined the issues as "whether the Human Rights Law and Disability Benefits Law 'relate to' employee benefit plans within the meaning of § 514(a), ... and, if so, whether any exception in ERISA saves them from pre-emption." *Shaw,* 463 U.S. at 96, 103 S.Ct. 2890. With respect to the Human Rights Law, the Court responded to the first issue affirmatively, *id.* at 96–101, 103 S.Ct. 2890, and the second question negatively, *id.* at 101–05, 103 S.Ct. 2890. The Court then summarized, saying

> [w]e hold that New York's Human Rights Law is pre-empted with respect to ERISA benefit plans *only insofar as it prohibits practices that are lawful under federal law.* To this extent, the judgments of the Court of Appeals are affirmed. To the extent the Court of Appeals held any more of the Human Rights Law pre-empted, we vacate its judgments and remand the cases.

*Id.* at 108–09, 103 S.Ct. 2890 (emphasis added).

Given the Court's qualification to the scope of pre-emption—"only insofar as it prohibits practices that are lawful under federal law"—we have to grapple with the fact that the species of discrimination in *Shaw*—pregnancy discrimination prior to 1979—was not prohibited by federal law, while the species of discrimination alleged in this case—age discrimination—is prohibited by federal law. Since the Supreme Court limited the extent to which the Human Rights Law is pre-empted, in effect pre-empting only that portion of it not in accord with federal law, we need to address whether the age discrimination portion invoked in this case is similarly pre-empted.

■ A sensible starting place for dealing with the Supreme Court's qualification is the two-step inquiry used in *Shaw. See id.* at 96, 103 S.Ct. 2890. We first must examine whether the age discrimination portion of New York's Human Rights Law "relates to" ERISA. *Id.* If we determine that it does so relate, we must then examine whether there is a section of ERISA that saves this portion of the law from pre-emption. *See id.*

■ *New York State Conference of Blue Cross* narrowed the parameters for determining when a state statute "relates to" an ERISA plan, recognizing that if the phrase "were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for '[r]eally, universally, relations stop nowhere.'" 514 U.S. at 655, 115 S.Ct. 1671 (quoting H. James, Roderick Hudson xli (New York ed., World's Classics 1980)). However, *New York State Conference of Blue Cross* did not address New York's Human Rights Law, whereas *Shaw* did. Given the Supreme Court's unequivocal determination in *Shaw* that the Human Rights Law "relates to" ERISA, we may not retreat from that position. *See Shaw,* 463 U.S. at 96–100, 103 S.Ct. 2890. We therefore proceed to the question of whether there is a section of ERISA that saves the age discrimination provisions of the state law from pre-emption.

Section 514(d) of ERISA provides that "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law." 29 U.S.C. § 1144(d). The Supreme Court explained in *Shaw* that "[g]iven the importance of state fair employment laws to the federal enforcement scheme, pre-emption of the Human Rights Law would impair Title VII to the extent that the Human Rights Law provides a means of enforcing Title VII's commands." 463 U.S. at 102, 103 S.Ct. 2890. Accordingly, the Court held that § 514(d) precluded preemption of the Human Rights Law, insofar as that state law prohibited practices that were also unlawful under Title VII. *See id.* at 102–03, 103 S.Ct. 2890. This rationale applies with equal force to the age discrimination provisions of the Human Rights Law.

Like Title VII, the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), provides for what the Supreme Court in *Shaw* termed "joint state/federal enforcement" of the rights protected by federal antidiscrimination law. *See id.* at 102, 103 S.Ct. 2890. Significantly, both Title VII and the ADEA require plaintiffs to resort to available state procedures to vindicate their rights, before filing suit in federal court. *See* 29 U.S.C. § 633(b); 42 U.S.C. § 2000e–5(c); *see generally Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 756, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979). And the federal Equal Employment Opportunity Commission ("EEOC") refers complaints filed with it in New York under either Title VII or the ADEA to the counterpart state agency. *See Shaw,* 463 U.S. at 101–02, 103 S.Ct. 2890 ("When an employment practice prohibited by Title VII is alleged to have occurred in a State or locality which prohibits the practice and has established an agency to enforce that prohibition, the [EEOC] refers the charges to the state agency."); *Promisel v. First Am. Artificial Flowers, Inc.,* 943 F.2d 251, 255 (2d Cir.1991) (summarizing relevant statutory

and regulatory provisions and stating that "[a] plaintiff who wishes to bring a discrimination claim under the ADEA must first file with the EEOC. In states such as New York which have their own agencies to investigate and obtain relief for discriminatory practices, however, the EEOC refers all such complaints to that state agency."). Although the interaction between federal and state law is not entirely transferable from the Title VII context to the ADEA context, *see, e.g., Oscar Mayer,* 441 U.S. at 756–57, 99 S.Ct. 2066 (noting that Title VII requires claimants to file charges with a state antidiscrimination agency *before* filing with the EEOC, while the "ADEA permits concurrent rather than sequential state and federal administration jurisdiction in order to expedite the processing of age-discrimination claims"), it is nonetheless apparent that both federal statutes rely upon a "joint state/federal enforcement" scheme.

Thus, the New York Human Rights Law is saved from preemption in this case precisely to the extent that its protections track those of the ADEA. *See Shaw,* 463 U.S. at 108, 103 S.Ct. 2890 ("We hold that New York's Human Rights Law is pre-empted with respect to ERISA benefit plans only insofar as it prohibits practices that are lawful under federal law."); *accord Humana, Inc. v. Forsyth,* — U.S. —, —, 119 S.Ct. 710, 718, 142 L.Ed.2d 753 (1999) ("We held in *Shaw* that the New York law was pre-empted only to the extent it prohibited practices lawful under Title VII. To the extent the New York law prohibited practices also prohibited under federal law, we explained, the New York law was not pre-empted . . . .") (citation omitted). We have consistently held that "[a]ge discrimination claims brought under the New York State Human Rights Law . . . are governed by the same standards as those brought under the ADEA." *Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 467 (2d Cir.1997); *accord Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1180 (2d Cir.1992). Accordingly, we are able to

conclude that no portion of the Human Rights Law—as it relates to appellants' age discrimination claims—will be pre-empted by ERISA.

While we hold that the district court erred in dismissing the age discrimination claims on the basis of pre-emption, we note that the brief for appellees TCU and Scardelletti also includes a footnote that defends dismissal on the alternative ground that plaintiffs have not pleaded facts that would permit a finding of age discrimination. Because we cannot determine from the record whether this argument was raised or litigated below, we decline to reach it here. Instead, we invite appellees to present this argument to the district court on remand.

### Preemption of Contract Claims

■ The district court, relying on *Smith v. Dunham–Bush, Inc.,* 959 F.2d 6, 10 (2d Cir.1992) and *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 62, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), also held that the common law contract claims were pre-empted by ERISA. We agree.

■ The two-part inquiry from *Shaw* is applicable here. *See Shaw,* 463 U.S. at 96, 103 S.Ct. 2890. The queries are (a) whether the contract claim asserted is related to an employee benefit plan, and, if so, (b) whether there is an exception under ERISA that precludes pre-emption of the state law. *Id.*

The common law contract claim at issue in this case clearly relates to an employment benefit plan, because it challenges the appellees' effort to modify such a plan. Resolution of the claim would necessarily involve interpreting the plan, its design, and ERISA. *See Smith,* 959 F.2d at 10 (stating that "the oral representation underlying this suit deals expressly and exclusively with the appellant's benefits"). The only way such a claim could be saved from pre-emption is if one of the saving provisions of § 1144(b) or (d) applies. *See Metropolitan Life Ins.,* 481 U.S. at 62, 107 S.Ct. 1542. None are applicable here.

The district court correctly held that the contract claim was pre-empted by ERISA.

### Promissory Estoppel

■ In addition to plaintiffs' state-law contract claim—which the district court held to be pre-empted—plaintiffs asserted a breach-of-contract component to the ERISA claim pleaded in Count One. In particular, plaintiffs argued that they had acquired "vested" contractual rights by virtue of written and oral representations allegedly made to the effect that retirees would receive lifetime health benefits, free of charge. The district court reasoned that no guarantee of lifetime, gratis benefits was adopted formally, and that the plaintiffs had not shown the "extraordinary circumstances" necessary to bind an ERISA defendant under a theory of promissory estoppel. *See Schonholz v. Long Island Jewish Med. Ctr.,* 87 F.3d 72, 78 (2d Cir.1996). Appellants insist on appeal that the instant case presents circumstances every bit as extraordinary as those in *Schonholz,* and that the district court should have recognized a viable promissory estoppel claim here. We affirm.

In *Schonholz,* the former Chief Operating Officer of Long Island Jewish Medical Center, Gleniss S. Schonholz, was asked by Dr. Robert K. Match, the President of the Medical Center, to resign, and she agreed to do so. In a subsequent letter from Match, asking for her resignation, dated December 18, 1992, Schonholz was told that she would be receiving certain severance benefits. She replied to this letter with a letter of resignation, effective April 1, 1993.

By March 23, 1993, the Medical Center's Board of Trustees became aware of the severance benefits promised to Schonholz, and the Board also became aware of Match's and Schonholz's correspondence. The Board voted to revoke the severance benefits, and Match told Schonholz of such. Match then wrote Schonholz a letter saying that the Board had never approved the severance benefits, therefore Match's of-

fering of such was a nullity, and the Medical Center was not bound by it.

Schonholz brought suit, arguing, among other things, that the letter from Match created a binding contract that vested her severance benefits and that the Medical Center was barred by promissory estoppel from denying her the severance benefits. The district court granted summary judgment for the Medical Center, holding that the letters between Match and Schonholz could not result in contractual vesting because they were not formal plan instruments. The district court also held that the promissory estoppel claim failed because Schonholz could not demonstrate injury.

We vacated and remanded, holding both that an issue of fact existed as to whether her severance benefits vested and that a promissory estoppel claim could be pursued. With respect to the promissory estoppel claim, we noted that "principles of estoppel can apply in ERISA cases under extraordinary circumstances," and we cited *Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir.1993), to support that contention. 87 F.3d at 78. We discussed what promissory estoppel was, according to the Restatement of Contracts, but we did not elaborate on what constituted "extraordinary circumstances" for purposes of allowing a promissory estoppel claim to go forward in an ERISA case. We thereafter delineated the four basic elements of promissory estoppel and determined that there were issues of fact with respect to the elements.

Because we ultimately vacated summary judgment in *Schonholz,* a reader might plausibly infer that we determined plaintiff to have adduced not only facts sufficient to support the four basic elements of promissory estoppel, but facts sufficient to support the "extraordinary circumstances" requirement as well. We will assume for the argument that this inference is correct, and that the *Schonholz* Court determined the existence of "extraordinary circum-

stances" sufficient to permit recovery under a theory of promissory estoppel. But even granting appellants this assumption, we conclude that the facts in the instant case are not nearly as "extraordinary" as those presented in *Schonholz.*

Admittedly, there is evidence in this record to support the notion that some employees—though not necessarily any of the appellants—considered the promised medical benefits in timing their retirements. But reliance is one of the four basic elements of promissory estoppel, and would not by itself render this case "extraordinary." In our view, the remarkable consideration in *Schonholz* was the defendants' use of promised severance benefits as an inducement to persuade Schonholz to retire. Because the defendant Medical Center was presumably bound by the acts of its agent, Dr. Match, it was as though the Medical Center had intentionally used the promise of severance benefits to win Schonholz's resignation, and then reneged once she resigned. In the instant case, by contrast, there is no evidence to suggest that appellees sought the retirement of any of the appellants, or that the promise of free, lifetime health benefits was used to intentionally induce any particular behavior on appellants' part. Accordingly, we cannot agree with appellants that *Schonholz* demonstrates the existence of "extraordinary circumstances" here. Nor have appellants called to our attention any other basis on which to find such circumstances. We therefore affirm the district court's determination that a promissory estoppel claim cannot be pursued in this ERISA case.

*Procedural Violation in Amending the Plan*

■ The appellants contend that there is an issue of material fact as to whether the people who amended the Plan were the "Organizations participating in the Group Policies" as contemplated by those who

drafted the Plan Instrument.[3] The district court held that there was no genuine dispute that the Plan was amended by the requisite parties because the Union submitted evidence that the amendment was signed by representatives of each organization that was a signatory to the benefits policy at the time. We agree.

The Supreme Court in *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995), instructed that the determination of whether the delineated amendment procedure was complied with is a "fact-intensive inquiry." *Id.* at 85, 115 S.Ct. 1223 (remanding the question to the Court of Appeals). The inquiry here is straightforward, given that the Plan specifies that amendments can be made by "Organizations participating in the Group Policies." The Union showed that representatives from each organization then a member executed the amendment, and the appellants have not controverted that evidence.

Appellants instead proffered the affidavit of Fred A. Hardin, the former Chairman of the Health and Welfare Committee who executed the Plan Instrument years prior, to show that it was his intent, at the time he signed the Instrument, that no changes could be made to it without his approval. Appellants argue that the affidavit makes clear that the Plan was not amended in accordance with the appropriate procedure, as contemplated by those who created the Plan. This argument, however, cannot stand given the clear amendment language of the Plan Instrument to the contrary. The Plan Instrument makes no mention of Mr. Hardin and his approval.

3. The Plan Instrument is the descriptive and implementing document for the Plan. The appellants contend that there is an ambiguity in the Plan and Plan Instrument because, though the Instrument originally provided that health benefits for the retirees would be paid by the Union, the Instrument also simultaneously provided that the right is reserved for the Organizations participating in the Group Policies to "terminate, suspend, withdraw, amend or modify *the Plan* in whole or

We affirm the district court's determination that those who approved the amendment were those authorized to do so.

*Vesting*

■ The district court held that the "Plaintiffs' claim to vested welfare benefits is contradicted by the union's unambiguous reservation in the Plan documents of its right to amend the Plan." It is unclear whether the appellants mean to appeal this issue. If they do, we affirm the district court.

■ Health and welfare benefits do not vest automatically. *See Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488, 491 (2d Cir.1988). In the face of the unambiguous language in the Plan documents providing for amendment at any time, there can be no question that the benefits in question were not vested. *See American Fed'n of Grain Millers,* 116 F.3d at 982.

*Substantive Violation of ERISA*

■ Appellants claim that the district court erred in determining that the substantive ERISA violations alleged did not constitute actual ERISA violations on the ground that ERISA does not proscribe discrimination of the sort alleged in the provision of retirement benefits. This argument is incorrect, and the district court's holding is affirmed.

Section 510 of ERISA, 29 U.S.C. § 1140, provides in part that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan."

in part at any time." (emphasis added). The right to amend language, appellants argue, refers to the "Plan," not the "Plan Instrument," so, at best, there is an ambiguity as to whether the right was reserved to amend the Plan Instrument in addition to the Plan.

We conclude that the argument that the key document for effectuating the Plan—the Plan Instrument—is not the Plan for purposes of amendment is without merit.

*Id.* We make no determination that the appellants were "discriminated" against in violation of § 510, but, even if they could establish such, appellees did not discriminate against the retirees "for exercising any right to which [they were] entitled under the provisions of an employee benefit plan." *Id.* Appellants make no argument even remotely alleging this sort of discrimination.

### Breach of Fiduciary Duties

Because we find that the Plan was properly amended, we need not address the issue of whether any of the appellees breached any fiduciary duties by improperly amending the Plan.

### Conclusion

For the above stated reasons, we (1) vacate the judgment of the district court insofar as it dismissed appellants' state-law age discrimination claim as pre-empted by ERISA, (2) affirm in all other respects, and (3) remand the cause to the district court. As should be apparent from this decision, the sole remaining claim does not implicate defendant-appellee The Travelers Insurance Company.